IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2016 Session

**MARTEZ D. MATTHEWS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3252     Mark J. Fishburn, Judge**
_____

**No. M2015-02422-CCA-R3-PC – Filed December 21, 2016**
_____


A Davidson County jury convicted the Petitioner, Martez D. Matthews, of first degree felony murder, and a life sentence was imposed. On appeal, this Court affirmed the trial court's judgments. *See Deangelo M. Moody and Martez D. Matthews*, No. M2011-01930-CCA-R3-CD, 2013 WL 1932718, at *1 (Tenn. Crim. App., at Nashville, May 9, 2013), *perm. app. denied* (Tenn. Oct. 17, 2013). Subsequently, the Petitioner filed a petition for writ of error coram nobis, which the trial court denied. On appeal, this Court affirmed the trial court's denial of relief. *See Martez D. Matthews v. State*, No. M2014-01663-CCA-R3-ECN, 2015 WL 3814164, at *1 (Tenn. Crim. App., at Nashville, June 19, 2015), *perm. app. denied* (Tenn. Oct. 15. 2015). The Petitioner also filed a post-conviction petition, and the post-conviction court denied relief following a hearing. On appeal, the Petitioner maintains that he received the ineffective assistance of counsel and that his sentence is unconstitutional pursuant to *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012). After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Patrick B. Newsom, Nashville, Tennessee, for the appellant, Martez D. Matthews.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; Glenn R. Funk, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

On April 25, 2009, the sixteen-year-old victim was shot by a stray bullet while inside her Davidson County residence. Three individuals, the Petitioner, Lorenzo Ortego Thomas, II, and Deangelo Monteze Moody, were indicted for the first degree felony murder of the victim and employing a firearm during the commission of a dangerous felony. Mr. Thomas's case was severed from his co-defendants because the State sought to call him as a witness at the joint trial of the Petitioner and Mr. Moody. Shortly before trial, according to the Petitioner's trial attorney ("Counsel"), Mr. Thomas's attorney announced to the court that Mr. Thomas refused to testify.[1]

The evidence presented at trial showed that, on April 25, 2009, the Petitioner, Mr. Thomas, Mr. Moody, Quontez Caldwell, and possibly a fifth unidentified male were driving around in Mr. Moody's car. As they drove down one road, they observed Christopher Bridges, a gang member at the time of the incident, and Deandre Williams walking down the street. Mr. Thomas observed Mr. Bridges reaching into his pocket for what Mr. Thomas believed to be a gun. Mr. Thomas responded by firing his gun into the air. Additional gunshots ensued. Mr. Caldwell, during a police interview, identified the Petitioner, Mr. Thomas, and Mr. Moody as participants in the shooting. The victim sustained a gunshot wound to her torso from a "stray" bullet that entered the victim's home during the shooting. Tennessee Bureau of Investigation testing and analysis confirmed that two 9 mm bullets recovered during the investigation were determined to have been fired from the Petitioner's 9 mm weapon. The Petitioner's black hat was also recovered from the roadway at the scene of the shooting. On May 12, 2011, a jury convicted the Petitioner and Mr. Moody as charged. Following the verdict, the State dismissed the employing a firearm during the commission of a dangerous felony charge, and the trial court sentenced the Petitioner to life imprisonment for the first degree felony murder of the victim.

In March 2012, Mr. Thomas pleaded guilty to second degree murder for a sentence of fifteen years. The following January, the Petitioner received a letter from Mr. Thomas stating he would testify on the Petitioner's behalf about the shooting. The Petitioner sought a petition for writ of error coram nobis, alleging newly discovered evidence in the form of Mr. Thomas's statements that the Petitioner was not a shooter. On July 10, 2014, the trial court held a hearing, and Mr. Thomas testified that Mr. Caldwell had taken the Petitioner's gun that was under the front passenger seat and used it to fire out the car window at Mr. Bridges and Mr. Williams. He stated that Mr.

---

[1] Elsewhere in the record there is reference to the State's electing not to call Mr. Thomas because the prosecutor believed Mr. Thomas was not being truthful.

Caldwell also fired his own gun at the time. When the Petitioner reached outside the window to grab his gun away from Mr. Caldwell, his hat fell off onto the road. Mr. Thomas said that the Petitioner did not fire the weapon but only took his gun away from Mr. Caldwell. Mr. Thomas's attorney confirmed that this was the same account that Mr. Thomas had related to her consistently throughout her representation. The trial court denied relief, finding Mr. Thomas was not truthful in his testimony, and this Court affirmed the trial court's order denying the petition. *See Martez D. Matthews v. State*, M2014-01663-CCA-R3-ECN, 2015 WL 3814164 (Tenn. Crim. App., at Nashville, June 19, 2015), *perm. app. denied* (Tenn. Oct. 15, 2015).

On November 6, 2014, a post-conviction hearing was held on the Petitioner's claim that he had received the ineffective assistance of counsel. At the hearing, the Petitioner testified that he was seventeen years old at the time of the offense and that he was serving a life sentence. The Petitioner claimed that Counsel failed to adequately explain felony murder to him. He said that counsel told him and that he understood that the State would have to prove that he was the actual shooter in order to convict him.

The Petitioner explained that, on the day of the shooting, he was in the car with four other individuals. He said that he was seated in the front passenger seat, Mr. Thomas was seated behind the driver, Mr. Moody was seated in the middle of the back seat, and Mr. Caldwell was seated in the back behind the passenger seat. He recalled seeing the two "guys" walking down the street and one of the two reached like he had a gun in his pants when the Petitioner heard gunfire. He said he "looked back" and saw Mr. Thomas firing his weapon and then saw Mr. Caldwell reach under the passenger seat and grab the Petitioner's gun. Mr. Caldwell was holding his own gun in one hand and the Petitioner's gun in the other. Mr. Caldwell "hung out the window" of the car and began firing both guns. The Petitioner said that he "reached up and grabbed [his] gun back." While doing so, his hat fell off. The Petitioner testified that he was unaware of any witnesses that were present at the scene that Counsel tried to interview.

Bob Lyons, a private investigator, testified that Mr. Thomas's attorney hired him to investigate the case in March 2012. While at the scene of the shooting, on March 5, 2012, he observed a strike mark on the house across the street from the victim's residence. This residence was a rental property and the occupants were not residing there at the time of the 2009 shooting. He described the strike mark as on the front right side of the house between the gutter and the window. He agreed that he had no way of knowing when the strike mark occurred. He stated that there was a hill across the street that he understood was where Mr. Bridges and Mr. Williams fled when the shooting began.

Counsel testified that she met with the Petitioner nineteen times after his case was transferred to criminal court. She said that she also talked with his mother about the case "a lot." Counsel provided the Petitioner with a copy of the discovery and listened to the recorded statements of the witnesses with him. Counsel recalled discussing felony murder and criminal responsibility with the Petitioner multiple times. She used the example of a bank robbery explaining that if he drove the car and she went inside to rob the bank while he waited in the car, he would be responsible for her actions inside the bank because he was "helping" her commit the robbery. Counsel thought the Petitioner understood criminal responsibility.

Counsel testified that she hired an investigator who went to the neighborhood where the shooting occurred and spoke with people in the area but never uncovered any "helpful or useful" information. Counsel explained that Mr. Thomas's case was severed from his co-defendants' case. It was later announced at a court hearing that the State had subpoenaed Mr. Thomas for trial. At the status hearing the week before the trial, Mr. Thomas's attorney announced that Mr. Thomas refused to testify. Counsel said that, in her experience, she had never had a co-defendant waive their Fifth Amendment right to remain silent and implicate themselves in a crime to acquit her client. She stated that, based upon Mr. Thomas's refusal to testify, she had no reason to believe that he would testify if she pursued it. In preparation for trial, Counsel reviewed Mr. Thomas's statement to the police. About Mr. Thomas's refusal to testify, Counsel said that she was "glad" because it allowed her to challenge the introduction through Mr. Caldwell of any of Mr. Thomas's statements in the car. She also did not believe that Mr. Thomas would have provided any testimony "helpful" to the Petitioner.

Counsel testified that she did not believe any evidence of strike marks on the house across from the victim's house would have been helpful to her defense of the case because there were no strike marks on the car, and the Petitioner had told her that shots were only fired from the vehicle. She said that it was her understanding that there were "a lot" of shootings in that particular neighborhood.

After hearing the evidence, the trial court issued an order denying relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

On appeal, the Petitioner contends that his life sentence for a crime committed when he was seventeen years old violates the bar against cruel and unusual punishment under the Eighth Amendment to the United States Constitution. He also argues that he received the ineffective assistance of counsel and that the post-conviction's court factual findings are flawed.

4

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn.1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id*. at 457.

## A. Petitioner's Sentence

The Petitioner contends that his sentence is unconstitutional in light of the Supreme Court's holding in *Miller v. Alabama* that a mandatory sentence of life without the possibility of parole for a juvenile offender violates the Eighth Amendment to the United States Constitution. *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012). Specifically, he contends that because he is "effectively" serving a sentence of life without parole, his sentence is unconstitutional. The State responds that the Petitioner is not entitled to relief because he received a life sentence *with* the possibility of parole, making *Miller* inapplicable here.

We agree with the State that the Petitioner risks waiver by failing to raise this issue on direct appeal. "A ground for relief is waived if the petitioner . . . failed to preset it for determination in any proceeding before a court of competent jurisdiction" unless certain exclusions not present in this case apply. *See* T.C.A. § 40-30-106(g). The Petitioner's direct appeal did not include an appeal of his sentence. *See Moody and Matthews*, 2013 WL 1932718, at *1-6. As such, the Petitioner risked waiving this issue. Notwithstanding waiver, we dispose of this issue on its merits.

In *Miller*, the Supreme Court held that mandatory sentencing schemes imposing a sentence of life without the possibility of parole for a juvenile offender violated the Eighth Amendment's prohibition against cruel and unusual punishment. *Miller*, 132 S.

Ct. at 2469.  In the case *sub judice*, the Petitioner received a life sentence[2] with the possibility of parole.  Although the Petitioner contends that the mandatory fifty-one years before release is effectively a functional life sentence, this Court has concluded that sentences that provide for the possibility of parole, even if the possibility will not arise until many years of incarceration have been served, do not violate *Miller*.  *Charles Damien Darden v. State*, No. M2013-01328-CCA-R3-PC, 2014 WL 992097, at *10 (Tenn. Crim. App., at Nashville, Mar. 13, 2014), *perm. app. denied* (Tenn. Sept. 18, 2014); *see also Floyd Lee Perry, Jr.*, v. State, No. W2013-00901-CCA-R3-PC, 2014 WL 1377579, at *5 (Tenn. Crim. App., at Jackson, Apr. 7, 2014) (concluding that the court was without jurisdiction because no application for permission to appeal was filed but noting that the petitioner would not be entitled to relief under *Miller* when he received a sentence of life with the possibility of parole as a juvenile), *perm. app. denied* (Tenn. Sept. 18, 2014).  Because the Petitioner received a sentence of life with the possibility of parole, his sentence is not unconstitutional.  The Petitioner is not entitled to relief on this issue.

## B. Ineffective Assistance of Counsel

The Petitioner alleges several deficiencies in Counsel's representation: (1) Counsel's failure to adequately investigate Mr. Thomas's statement and/or testimony; (2) Counsel's failure to raise an issue regarding an Eighth Amendment violation as to sentencing on direct appeal; (3) Counsel's inadequate investigation in support of a self-defense theory; and (4) Counsel's inadequate explanation of felony murder to the Petitioner.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution.  *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).  The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment.  Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that

---

[2] Pursuant to Tennessee Code Annotated section 40-35-501(i)(1) (2014), currently a life sentence for first degree murder does not involve parole.  For enumerated offenses in subsection (i)(2), that are committed on or after July 1, 1995, the statute provides release eligibility after fifty-one years.

counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional

7

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

### 1. Failure to Investigate

The Petitioner asserts that Counsel was ineffective in her investigation of Mr. Thomas's statements and ineffective for failing to call him as a witness at trial. At the post-conviction hearing, the post-conviction court concluded that the Petitioner had failed to establish Counsel's ineffectiveness. The post-conviction court noted that the Petitioner had failed to call Mr. Thomas as a witness at the post-conviction hearing. The Petitioner claims that this was error on the part of the post-conviction court because the parties stipulated to Mr. Thomas's testimony from the error coram nobis hearing and the transcript of the hearing was entered into evidence.

In denying relief, the post-conviction court did find that the Petitioner had failed to present Mr. Thomas as a witness at the post-conviction hearing. To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a petitioner should present that witness at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn.Crim.App.1990). The record before us includes Mr. Thomas's testimony from the error coram nobis hearing; however, it does not include evidence that the State and the trial court agreed that Mr. Thomas's error coram nobis hearing testimony stand in place of his testimony at the post-conviction hearing. In its order denying relief, the post-conviction court addressed the error coram nobis hearing transcript, noting that it had found Mr. Thomas's testimony not credible at the error coram nobis hearing. Thus, it would appear that the post-conviction court did consider this testimony in reaching its decision.

Counsel testified that she had no reason to believe that Mr. Thomas would testify on behalf of the Petitioner after his attorney announced in court that Mr. Thomas refused to testify. Additionally, Counsel testified that, after reviewing Mr. Thomas's statement to the police, she did not believe his testimony would help the defense. In our view, Counsel's decisions with regard to Mr. Thomas as a potential witness were informed and based upon adequate preparation. Accordingly, the Petitioner has failed to show by clear and convincing evidence that Counsel was ineffective.

The Petitioner also claims that Counsel failed to adequately investigate the possibility of a self-defense strategy. The post-conviction court concluded that Counsel had conducted a "thorough investigation of the case" and all possible defenses. The post-conviction court accredited Counsel's testimony that the only shots fired during the

incident were from the vehicle. There was no evidence that the stray marks that Mr. Thomas's investigator found in 2012 were related to the 2009 shooting or that the marks were present on the residence in 2009. The Petitioner told Counsel that the only shots fired were fired from the vehicle with no return fire from Mr. Bridges and Mr. Williams. The Petitioner has failed to show that Counsel was ineffective for not investigating or presenting a theory of self-defense at trial. The Petitioner is not entitled to relief as to this issue.

## 2. Failure to Challenge the Petitioner's Sentence as Unconstitutional

The Petitioner argues that Counsel was ineffective for failing to raise *Miller v. Alabama* as support for the contention that his sentence of life with the possibility of parole is unconstitutional. The State asks us to waive this issue because the Petitioner failed to raise this issue in his petition and offered no argument or evidence of this issue at the post-conviction hearing. We agree with the State that the Petitioner has waived our review of this issue pursuant to Tennessee Code Annotated, section, 40-30-104(d), which provides that all claims shall be in the petition. Further, because there is no testimony about this issue from the hearing, there is nothing for our review. We would note, however, that based upon our conclusion that the Petitioner's sentence is not unconstitutional pursuant to *Miller v. Alabama*, the Petitioner would be unable to show that Counsel's failure to make this challenge prejudiced his defense. The Petitioner is not entitled to relief as to this issue.

## 3. Inadequate Explanation of Felony Murder

The Petitioner contends that Counsel was ineffective for inadequately explaining the concepts of felony murder and criminal responsibility to him. The post-conviction court found that Counsel "consistently and effectively communicated" with the Petitioner. The record supports the post-conviction court's findings. Counsel testified that she met with the Petitioner nineteen times after the Petitioner was transferred to criminal court. She explained the concepts to him multiple times and recounted an example she used to illustrate the concept of felony murder and criminal responsibility involving a bank robbery and a getaway driver. Counsel said she believed the Petitioner understood these concepts. Other than the Petitioner's bare assertion that he did not understand felony murder, there is no support in the record that his lack of understanding can be attributed to Counsel's failure to explain and review felony murder and criminal responsibility with him.

Accordingly, the Petitioner has failed to show by clear and convincing evidence that Counsel was ineffective in her explanation of felony murder. The Petitioner is not entitled to relief as to this issue.

### C. Errors in the Post-Conviction Court's Order

Finally, the Petitioner contends that the post-conviction court's factual findings in the order denying relief are flawed. The Petitioner relies on two instances in the order: (1) a reference to the Petitioner driving the vehicle at the time of the shooting; and (2) a reference to Counsel making a strategic decision not to call Bob Lyons at trial about the strike mark he found on the house located across the street from the victim's house. The Petitioner asserts that these two errors cause the evidence to preponderate against the post-conviction court's denial of post-conviction relief.

The Petitioner is correct that the record does not indicate that the Petitioner was the driver of the vehicle at the time of the shooting. Additionally, Mr. Lyons did not investigate the crime scene until 2012, well after the Petitioner had been convicted at trial. These factual errors, however, in no way affect the weight of the evidence supporting the trial court's findings regarding Counsel's performance nor do these two facts relate to the Petitioner's claims of ineffective representation of Counsel. As discussed above, the record supports the trial court's findings with regard to Counsel's representation. The Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude that the Petitioner was afforded the effective assistance of counsel and that his sentence is not unconstitutional. Accordingly, affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

10